UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICA A. C.,[1]<br><br>                Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. 2:21-cv-002132-JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

**I.  SUMMARY**

On March 9, 2021, plaintiff Felica A. C. filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions").  The Court has taken the Motions under submission

---

[1] Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order filed on May 10, 2021, at ¶ 5.

    Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.  In this case, the Administrative Law Judge ("ALJ") materially erred by rejecting plaintiff's subjective symptom testimony without providing adequate reasons.

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

    On or about August 9, 2017, plaintiff filed an application for Disability Insurance Benefits, alleging disability beginning on October 1, 2013, due to bilateral knee and shoulder injuries, arthritis, back pain with right side sciatica, left hand numbness, hypertension, gastroesophageal reflux disease, asthma, morbid obesity, and adjustment disorder with depressed mood. (Administrative Record ("AR") 230-33, 251).  Plaintiff reportedly also filed an application for Supplemental Security Income on December 30, 2017. (AR 29).  The ALJ subsequently examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 52-80).

    On January 29, 2020, the ALJ determined that plaintiff had not been disabled through the date of the decision. (AR 29-43).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: arthritis, asthma, disorders of the back, bilateral knees, hips, and left shoulder, status post left cubital tunnel release, sciatica, and obesity (AR 32-34); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 34-35); (3) plaintiff retained the residual functional capacity to perform sedentary work (20 C.F.R. §§ 404.1567(a), 416.967(a)), with

///

///

additional limitations[2] (AR 35-41 (adopting capacity consistent with state agency physician's opinion at AR 91-93))); (4) plaintiff could perform her past relevant work as a customer-complaint clerk and therefore was not disabled (AR 41-42 (adopting vocational expert testimony at AR 75-77, 79)); and (5) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 36-40).

On September 21, 2020, the Appeals Council denied plaintiff's application for review. (AR 15-17).

### III. APPLICABLE LEGAL STANDARDS

#### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds as stated in Sisk v. Saul, 820 Fed. App'x 604, 606 (9th Cir. 2020); 20 C.F.R. §§ 404.1505(a), 416.905(a). To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well

---

[2] The ALJ determined that plaintiff would be limited to: (1) lifting and carrying 20 pounds occasionally and 10 pounds frequently; (2) standing and/or walking for four hours in an eight-hour workday; (3) sitting for six hours in an eight-hour workday; (4) occasionally pushing and pulling, climbing ramps and stairs, ladders, ropes, and scaffolds, balancing, stooping, kneeling, crouching, and crawling, and reaching overhead with the left upper extremity; (5) frequently reaching with the left upper extremity, performing fine manipulation (*e.g.*, fingering) and handling with the left upper extremity, and gripping up to 10 pounds with the left upper extremity; and (6) avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (AR 35).

as any other "work which exists in the national economy."  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

      To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations.  See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920).  The claimant has the burden of proof at steps one through four – i.e., determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4).  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The Commissioner has the burden of proof at step five – i.e., establishing that the claimant could perform other work in the national economy.  Id.

**B.**    **Federal Court Review of Social Security Disability Decisions**

      A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard of review in disability cases is "highly deferential."  Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  See Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2)

ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

**IV. DISCUSSION**

Plaintiff contends, *inter alia*, that the ALJ erred by improperly rejecting her subjective symptom testimony. (Plaintiff's Motion at 2-11). For the reasons stated below, the Court agrees. Since the Court cannot find that the error was harmless, a remand is warranted.

///

### A. Pertinent Law

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his subjective symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities. 20 C.F.R. §§ 404.1529(a), (c)(4), 416.929(a), (c)(4); SSR 16-3p, 2017 WL 5180304, at *4-*10.[3]

When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities. See SSR 16-3p, 2017 WL 5180304, at *8. In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89. This requirement is very difficult to satisfy. See Trevizo, 871 F.3d at 678 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and quotation marks omitted).

---

[3]Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation." See SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.

An ALJ's decision "must contain specific reasons" supported by substantial evidence in the record for giving less weight to a claimant's statements. SSR 16-3p, 2017 WL 5180304, at *10. An ALJ must clearly identify each subjective statement being rejected and the particular evidence in the record which purportedly undermines the statement. Treichler, 775 F.3d at 1103 (citation omitted). "General findings are insufficient[.]" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). When an ALJ fails properly to discuss a claimant's subjective complaints, however, the error may not be considered harmless "unless [the Court] can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Brown-Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting claimant testimony "will usually not be harmless").

**B.     Summary of Plaintiff's Testimony and Statements**

Plaintiff testified that she cannot sit too long or her legs and hips get numb and cause her to buckle and fall when she gets up, she also has bilateral sciatica that causes sharp pain from sitting too long, her left arm and shoulder are numb to the fingertips, she has ulnar point neuropathy, and she has back pain. (AR 58-59). She also has anxiety attacks two or three times a week which last up to 40 minutes. (AR 67).

Plaintiff was using a walker at the hearing and said she had been using it for about two years, alternating with using a cane at home, as prescribed by her pain doctor because her legs give out and she falls. (AR 59-60). Plaintiff had undergone knee and shoulder surgeries, a gastric bypass surgery followed by 120 pounds weight loss, and had tried knee injections, physical therapy, acupuncture,

and water aerobics. (AR 61-62). Plaintiff thought her bypass surgery had made things worse because she now suffered from low blood sugar that causes her to faint, and she had more hip and leg pain after the bypass. (AR 62). She was taking anxiety medications, a muscle relaxer, Norco, and Gabapentin, which she admitted helped with her pain and anxiety, not 100 percent – reducing her pain to a level of 4/5 out of 10, but said they also make her "woozy and sleepy" for an hour or two such that she does not leave the house. (AR 62-65, 68). She said physical therapy for her arm had only made her numbness worse. (AR 63).

Plaintiff said she could stand for 10 to 15 minutes before needing to sit down, she could walk for less than half a block slowly, and she could sit for 20 minutes before having pain and numbness. (AR 65). She said she tries to alternate between sitting and standing during the day but everything hurts. (AR 66). She thought she could lift five pounds or less given her left hand numbness. (AR 66). She could climb two or three steps and could not bend or kneel. (AR 66-67). She uses a chair to shower because she fell in the shower. (AR 72).

Plaintiff spent her days trying to get her 17-year-old son out of the house on time for school, eating, taking her medication, lying down/sleeping one or two more hours with a heating pad, going on group mental health outings for craft-type 30-minute classes a couple times a week, and lying down/sleeping the majority of the day. (AR 69-70, 72-73). She said her son helps with household chores because she cannot bend to do things like vacuum and dust and it is hard to sweep or work overhead because of her shoulder. (AR 70-71). She tries to do the best things she can do given her limitations. (AR 70). She could make her bed and cook while seated at her own pace. (AR 70). She could drive but tried not to because of the influence of her medication, and she could shop but normally someone takes her and she uses a cart to get around. (AR 71).

In a Function Report - Adult form dated August 18, 2017, plaintiff reported that she could not sit or stand long due to knee pain and sciatica, and she has an

unstable gait, back pain, and left hand tingling/numbness. (AR 264-72). Plaintiff admitted that on a typical day she takes her son to school, takes her medications, feeds herself, watches television, tries to clean if she has energy, picks up her son from school, helps with housework, feeds her son, takes her medications then goes to bed. (AR 265). She was able to prepare frozen meals, sandwiches, and spaghetti that will last for days, taking two or three hours to do so due to pain, and she could do light cleaning and laundry but it takes her all day to do so with breaks for pain. (AR 266). She admitted she could use public transportation and drive, shop for food and household items in stores once or twice per month. (AR 267). Plaintiff reported problems with lifting, squatting, bending, standing more than 30 minutes, walking more than 10 minutes, sitting more than 40 minutes, kneeling, stair climbing, and using her hands. (AR 269). She reported that she uses a cane and a knee brace prescribed by a doctor in 2013. (AR 270). Plaintiff did not mention lying down during the day. (AR 264-72).[4]

### C. Analysis

The ALJ summarized plaintiff's allegations and testimony. (AR 36). The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not

---

[4]In discussing the hypothetical questions with the vocational expert, the ALJ said she found plaintiff's testimony credible and supported by the medical record, and took some factors into consideration in questioning the vocational expert. (AR 77). However, the ALJ then asked the vocational expert whether a person who would be changing positions between sitting, standing, and lying down, due to pain after standing up to 15 minutes, or sitting for 20 minutes – as plaintiff had testified – would be able to perform her past relevant work, and the vocational expert said it would eliminate all jobs. (AR 77-78). The ALJ clearly did not credit all of plaintiff's testimony or she would have found plaintiff disabled. Rather, the ALJ adopted the state agency physician's residual functional capacity assessment which had found plaintiff's statements only partially credible as not supported by the medical record and plaintiff's activities of daily living. Compare AR 35 (ALJ's residual functional capacity determination) with AR 90-93 (state agency physician's opinion).

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (AR 36). However, the ALJ failed to provide specific, clear, and convincing reasons to support this determination.

The ALJ reasoned, "the evidence does not support the severity of symptoms and dysfunction that would be expected if the claimant were as limited as she alleges." (AR 37). The ALJ went on to discuss the medical evidence showing knee, wrist, and shoulder injuries after plaintiff fell at work, as well as the evidence suggesting that plaintiff has degenerative changes/osteoarthritis in her knees, multilevel degenerative disc disease with radiating pain in the lumbar spine, bilateral hip bursitis, recurrent left cubital tunnel syndrome, and obesity, as well as the knee, shoulder, and gastric bypass surgeries plaintiff underwent, and other significant treatment including steroid injections and pain management. (AR 37-39). The ALJ observed that assertedly there was "no objective medical evidence to support the claimant's allegations she requires a cane or walker to ambulate currently." (AR 38). The ALJ also observed that at times plaintiff reported sufficient analgesia from her current treatment regimen, which included Norco, Robaxin, and Gabapentin, and denied side effects. (AR 38-39 (citing AR 813, 816). The ALJ concluded:

> The undersigned has accounted for the claimant's arthritis; asthma; disorders of the back, bilateral knees, hips, and left shoulder; post left cubital tunnel release; sciatica; and obesity by limited [sic] her to a reduced range of sedentary work with the postural, manipulative, and environmental limitations stated above.

(AR 39).

The ALJ also cited to purported inconsistencies between plaintiff's testimony and her various reports (*e.g.*, plaintiff testified that she was not able to do household chores, but she reported in a Function Report that she cares for her son, including taking him to and from school, cooks, cleans, does laundry, and

goes shopping, and she reported to the psychological examiner that she does perform household chores). See AR 40 (citing AR 264-72 (Function Report - Adult form reporting plaintiff could do light cleaning and laundry once a week which takes her all day with breaks), and AR 552-53 (psychological examiner noting that plaintiff reported she "can participate in household chores," and is able to drive or take public transportation). The ALJ noted that plaintiff admitted she could dress and bathe herself, she has no problems performing personal care tasks, and she can drive, take public transportation, and go on outings with her mental health group which includes attending classes. See AR 40 (citing AR 264-72, 552-53). The ALJ concluded that these admissions were inconsistent with plaintiff's allegations of totally disabling impairments. (AR 40).

Turning first to the asserted inconsistencies between plaintiff's complaints and her self reports, an ALJ may rely on such inconsistencies to discount a claimant's allegations. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between [her] testimony and [her] conduct"); see also Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (ALJ can reject pain testimony based on plaintiff's prior inconsistent statements). However, substantial evidence does not support the ALJ's reasoning in this instance. As summarized above, plaintiff did not testify that she was unable to do household chores; she testified about taking care of her 17-year-old son and the limited chores that she did with help and with her own accommodations, like cooking while seated at her own pace. See AR 69-73. Plaintiff testified that she could drive but she tried not to because of the influence of her medication, and she could shop but normally someone takes her and she uses a cart to get around. (AR

///

///

///

71).[5] Plaintiff's testimony is not necessarily inconsistent with plaintiff's admissions in her Function Report and elsewhere that she could dress and bathe herself, she has no problems performing personal care tasks, and she can drive, take public transportation, and go on outings with her mental health group which includes attending classes. Compare AR 65-72 with AR 264-72, 552-53. Nor are plaintiff's admissions of her limited activities inconsistent with her allegations of disabling impairments given that she reportedly accommodates her symptoms by resting or lying down for most of the day. Id. On this record, the ALJ's reasoning does not support the ALJ's rejection of plaintiff's testimony and statements suggesting greater limits than the ALJ found.

Turning to the medical evidence, a purported lack of supporting objective medical evidence is not – in and of itself – a sufficient basis to discount a claimant's testimony, but may be a relevant factor. See, e.g., Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Having found that substantial evidence does not support the purported inconsistencies on which the ALJ relied in discounting plaintiff's statements and testimony, the ALJ's only remaining reason for discounting plaintiff's statements and testimony (*i.e.*, the available medical evidence) cannot stand.

Even if the ALJ's evaluation of the available medical evidence could support the ALJ's determination, the ALJ did not explain adequately how the medical evidence undermined or contradicted plaintiff's statements beyond the ALJ's

---

[5]In discussing the hypothetical questions with the vocational expert, the ALJ said she found plaintiff's testimony credible and supported by the medical records, and took some factors into consideration in questioning the vocational expert. (AR 77). However, the ALJ then asked the vocational expert whether a person that would be changing positions between sitting, standing, and lying down, due to pain after standing up to 15 minutes, or sitting for 20 minutes – as plaintiff had testified – would be able to perform her past relevant work, and the vocational expert said it would eliminate all jobs. (AR 77-78). The ALJ clearly did not credit all of plaintiff's testimony or she would have found plaintiff disabled.

observations that: (1) the record did not support plaintiff's allegations that she requires a cane or walker to ambulate "currently"; and (2) at times plaintiff reported sufficient analgesia from her treatment regimen with no side effects. (AR 38-39). Substantial evidence does not support this limited reasoning.

The record reflects that plaintiff was prescribed a cane after her fall at work in September 2013. See AR 981 (treatment note from September 24, 2013, following plaintiff's fall at work, wherein her treatment included a cane and bilateral knee sleeves); see also AR 478 (October, 2013 treatment note from three weeks after plaintiff's fall, where her provider noted that plaintiff was "subjected to utilize a cane to assist in ambulation," after she had presented with an antalgic gait using a cane for support, with the provider recommending arthroscopic surgery).[6] With few exceptions, subsequent treatment notes from 2013 through 2019, indicate that plaintiff either required a cane, was using a cane for support, or had an antalgic gait with or without the use of a cane. See AR 976 (requiring plaintiff to use a cane); AR 431, 434, 438 (noting use of cane for support for pain causing left knee to give away); AR 471-73 (noting use a cane for assistance with antalgic gait after surgery); AR 551, 553, 931, 970 (noting use of cane); AR 433, 436, 438, 440, 442-43, 475, 477-78, 663, 669, 675, 681, 687, 692, 697, 936, 955, 957, 1144 (noting antalgic gait using a cane); AR 411, 413, 416, 445, 447, 464, 466, 879, 883 (noting antalgic gait); but see AR 558, 561 (internal medicine consultative examiner reporting in October 2017, that plaintiff presented with a cane but did not appear to need it for short distances, noting normal gait and balance, and finding no need for an assistive device); AR 657 (July 2019 note reporting normal gait); AR 815 (October 2019 note reporting normal gait).

---

[6]Defendant argues that the record did not show that any provider found plaintiff needed an assistive device to ambulate, and suggests that plaintiff "nowhere points to evidence that a provider prescribed an assistive device." (Defendant's Motion at 14-15). While plaintiff was not required to point to such evidence, such evidence appears in the doctor's first report of occupational injury or illness after her 2013 fall. See AR 981.

The record also reflects that at the time the plaintiff reported sufficient analgesia from her treatment regimen and no side effects, plaintiff also reported that she had: (1) neck pain that was better with medication but worse with moving her head down; (2) radiating back pain that is 10/10 without medication, worsened by walking and driving and made better by lying down, heat and medication; (3) bilateral hip pain that was 8/10 that day; and (4) bilateral knee pain that was 8/10 without medication, worsened by walking and alleviated with rest (AR 813). The detail in the record the ALJ cited suggests that, in addition to her pain medications (and consistent with her allegations), plaintiff relied on rest/lying down to help alleviate her pain. Certainly, the ALJ's brief mention of purported analgesia does not undermine plaintiff's testimony that she cannot sit for more that 20 minutes, stand for more than 15 minutes, or must alternate between sitting, standing, and lying down throughout the day.

The ALJ otherwise referenced plaintiff's examination findings and found that the residual functional capacity assessment reasonably accounted for plaintiff's impairments. (AR 39). The ALJ failed to demonstrate how these findings support the rejection of plaintiff's statements. See Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020) ("Although the ALJ did provide a relatively detailed overview of [plaintiff's] medical history, 'providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.") (quoting Brown-Hunter, 806 F.3d at 494); see also id. at 1268 ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.").

Defendant suggests that the ALJ adequately addressed plaintiff's testimony and statements by citing to specific medical records as contrasted to plaintiff's specific statements and testimony, including some notes reflecting improvement with the assertedly conservative treatment that plaintiff received. See Defendant's
///

14

Motion at 11-14. The ALJ did not make these parallel arguments, and the Court is constrained to those reasons the ALJ provided. Trevizo, 871 F.3d at 675.

Because the ALJ failed to provide specific, clear, and convincing reasons to discount plaintiff's subjective statements, remand is warranted for reconsideration of these statements. See Treichler, 775 F.3d at 1103 ("Because 'the agency's path' cannot 'reasonably be discerned,' we must reverse the district court's decision to the extent it affirmed the ALJ's credibility determination.") (quoting Alaska Dep't of Env't Conserv. v. E.P.A., 540 U.S. 461, 497 (2004)).

## V. CONCLUSION

For the foregoing reasons,[7] the decision of the Commissioner of Social Security is REVERSED in part, and this matter is REMANDED for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 30, 2022

                                                  /s/
                                  Honorable Jacqueline Chooljian
                                  UNITED STATES MAGISTRATE JUDGE

---

[7]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate based thereon. When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in Social Security cases) (citations omitted).